UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| ANGEL RUIZ RIVERA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-1560 (RBW) |
| | ) | |
| ERIC HOLDER,[1] et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff Angel Ruiz Rivera, who is proceeding pro se, brings this action against the Attorney General, in his official capacity, and other attorneys employed by the United States Department of Justice ("DOJ"), alleging that under the Fifth Amendment of the United States Constitution, the Federal Torts Claims Act, 28 U.S.C. § 1346(b) ("FTCA"), and Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), the defendants improperly caused the "non-profit technical and higher education institution he founded in Bayamon, [Puerto Rico]," the Instituto de Educacion Universal ("Instituto"), of which he is the President and fiduciary agent, to be maliciously prosecuted by the United States Attorney's Office, resulting in $28 million in taxes being assessed against the plaintiff personally. Complaint ("Compl.") ¶ 9.[2] The plaintiff contends that the tax liability should have been imposed on the Instituto instead. Compl. ¶¶ 5-7. The plaintiff also challenges the alleged confiscation of over $2.2 million from the Instituto

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d)(1), the Court has substituted the current Attorney General, Eric Holder, for Attorney General Alberto Gonzales, who was in office when this action was filed.

[2] The plaintiff's complaint lacks paragraph numbers for every paragraph. Where paragraph numbers are absent, the Court will refer to the page numbers at which the information may be found.

-
-

through other legal proceedings. Compl. ¶¶ 2-5, 8-10.[3] Currently before the Court is the defendants' motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for dismissal of the plaintiff's complaint on the grounds of the Court's lack of subject-matter jurisdiction, that collateral estoppel and the defendants' sovereign immunity stand as bars to the plaintiff's complaint, and the plaintiff has failed to state a claim upon which relief can be granted.[4] See Defendants' Motion to Dismiss the Complaint ("Defs.' Mot."); Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss the Complaint ("Defs.' Mem.") at 1. The plaintiff opposes the motion.[5] For the following reasons, the Court must grant the defendants' motion.

---

[3]  While the plaintiff filed a pleading entitled "First Amended Complaint" on March 16, 2009, this document merely listed three factually unsupported and broad legal assertions against the defendants that the plaintiff sought to add to his original complaint. By itself, the document is insufficient as a matter of law to put the defendants on notice of all the legal claims against them. See Erickson v. Pardus, 551 U.S. 89, 93 (2007) ("[T]he statement need only 'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007))). Yet, the Court must afford considerable deference to a plaintiff who is proceeding pro se, Atherton v. Dist. of Columbia Office of Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009) ("A pro se complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting Erickson, 551 U.S. at 94)), and accordingly, the Court will consider both the allegations in the plaintiff's original complaint and the allegations in the plaintiff's amended complaint.

[4]  The defendants also seek dismissal of this action under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5) based on the plaintiff's alleged deficient service of process and the Court's lack of personal jurisdiction. Defs.' Mot. at 1; Defs.' Mem. at 8-9 & n.1. The defendants state that to the extent the plaintiff has brought claims against any of the defendants in their individual capacities, they have not been individually served, but that even if defendants Garcia, Bonar, and Acosta had been properly served, the complaint does not allege any activities by them that would bring them within this Court's jurisdiction. Defs.' Mem. at 9-10. Because the Court grants the defendants' motion on other grounds, it will not reach these questions.

[5]  The Court considered the following documents submitted in connection with this motion: Plaintiff's Complaint ("Compl."); First Amended Complaint; Defendants' Motion to Dismiss the Complaint ("Defs.' Mot."); Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss the Complaint ("Defs.' Mem."); Plaintiff's Motion in Opposition to Motion to Dismiss ("Pl.'s Opp'n"); and Defendants' Reply in Support of Their Motion to Dismiss the Complaint ("Defs.' Reply").

   The plaintiff has also filed several motions subsequent to the filing of the defendants' motion to dismiss, including a Motion to Compel Discovery, which the defendants oppose, see Defendants'

(continued . . .)

## I. BACKGROUND

The present dispute arises from a United States Department of Education ("DOE") audit of the Instituto that occurred in 1994 and 1995. Compl. ¶ 4. The Instituto was a "private, non-profit educational institution based in Puerto Rico, which received federal student financial assistance funds under Title IV of the Higher Education Act of 1965." Defs.' Mem. at 4. The DOE "administered these financial assistance funds[,] and[] in 1994, the DOE's Inspector General performed an audit[,] which resulted in findings of 'clock hour,' 'excess cash,' and 'refund' violations by the [Instituto]."[6] Id. As a result of these findings, "the DOE declared [the Instituto] ineligible to participate in federal student aid programs, imposed a substantial fine, and instituted collection proceedings to recover $1,284,900 in overcharges, $756,864 in excess cash receipts, and $655,554 in unpaid refunds." Id. Pursuant to these debts and liabilities, the DOE confiscated over $2.263 million from the Instituto and the plaintiff in 1997 and the IRS attempted to collect $28 million from the plaintiff in 1998. Compl. ¶¶ 8-9.

Beginning in 1996, the plaintiff brought a series of administrative claims against the DOE to challenge the findings. See Compl. ¶ 12-14; Defs.' Mem. at 5. Although an administrative law judge granted "a partial reversal of the 'clock hour' finding," on appeal of the law judge's

---

(. . . continued)

Opposition to Plaintiff's Motion to Compel Discovery, and a motion seeking admissions by the defendants. Based on the Court's finding that this case should be dismissed, it need not reach the merits of these subsequently filed motions and they will be denied as moot.

[6]    A "clock hour" is "[a] period of time consisting of-(1) A 50- to 60- minute class, Lecture, or recitation in a 60-minute period; (2) A 50- to 60-minute faculty-supervised laboratory, shop training, or internship in a 60-minute period." Instituto de Educacion Universal, Inc. v. U.S. Dep't of Educ., 341 F. Supp. 2d 74, 79 (D.P.R. 2004). The DOE disburses Pell Grant funds to students based on the "requisite number of clock hours or credit hours of instruction." Id. The clock hour finding by the DOE was based on the court's concern about the Instituto's calculation of "clock hours in a manner inconsistent with the regulation with the purpose of receiving funding prematurely for instructional hours that are not actually earned." Id. at 79-80.

findings the Secretary of Education "reinstated the DOE's initial findings of a 'clock hour' violation and upheld the other findings of 'excess cash' and 'refund' violations, thus reinstating [the Instituto's] full liabilities." Defs.' Mem. at 4-5. The plaintiff sought review of the Secretary's decision from the United States District Court for the District of Puerto Rico. Compl. ¶ 15. "[T]he district court . . . granted summary judgment in favor of [the] DOE," Defs.' Mem. at 4-5, holding that the DOE's actions "were not arbitrary and capricious[,] . . . [had] ample evidence to support its conclusion[,] . . . [and showed no evidence of] bad faith, improper conduct, or manipulation by [the DOE] that would permit the Court to reopen the established agency record." Instituto de Educacion Universal, Inc. v. U.S. Dep't of Educ., 341 F. Supp. 2d 74, 80-84 (D.P.R. 2004). The First Circuit affirmed the district court's decision in 2007. See Instituto de Educacion Universal, Inc. v. U.S. Dep't of Educ., No. 06-1562, 2007 WL 1519059, at *1 (1st Cir. May 11, 2007).

Throughout the plaintiff's administrative complaint process and the subsequent litigation in federal court, the plaintiff has maintained that the DOE's audit findings pertaining to the clock hour refund and excess cash violations conflicted with clear and convincing evidence that called for the opposite conclusions. See generally Compl. The plaintiff further alleges in this case that the audit findings were tainted by the fraudulent actions by both DOE's legal counsel and further perpetuated by the defendants. Specifically, the plaintiff asserts that the DOE

> [o]bstruct[ed] justice [by] deliberately suppressing the . . . fact [that Auditor Nater was expelled;] . . . suborned the perjury of his supervisor, Puerto Rico's OIG Office Chief Auditor Porfirio Rios[;] . . . suborned the perjury of corrupt [Internal Revenue Board] auditor Felix Lugo[;] . . . and intimidated the . . . independent Certified Public Accountants . . . that [the plaintiff] had [called upon] as witnesses [in support of his case].

Compl. ¶ 41. The plaintiff seeks to recover civil damages for injuries arising from the defendant attorneys' representation of the DOE, predicated on his theory that the defendants' representation

4

wrongfully perpetuates the DOE's alleged fraud, and that the defendants have ignored exculpatory evidence in their possession that would have assisted the plaintiff in prior proceedings. Compl. ¶ 28. It is the plaintiff's position that because the defendants "knew or should ha[ve] reasonably known" that the available evidence contradicted the basis for the DOE's defense, the plaintiff's rights were violated. See generally Pl.'s Opp'n. The plaintiff therefore requests that the Court compel the defendants to "produce . . . suppressed exonerating evidence and to dismiss . . . all the . . . imputed liabilities against the [p]laintiff."[7] Compl. at 28. As noted above, the defendants have now filed a motion to dismiss the plaintiff's claims on the grounds that the Court lacks subject-matter jurisdiction, that collateral estoppel and the defendants' sovereign immunity stand as bars to the plaintiff's complaint, and that the plaintiff has failed to state a claim upon which relief can be granted. See Defs.' Mem.

---

[7]  The plaintiff's request to compel the defendants to disclose their evidence appears to be pursued only for the purpose of having the defendants admit to their alleged wrongdoing. Compl. at 27 ("[T]he [d]efendants . . . [acted] contrary to the overwhelming smoking gun and beyond doubt evidence timely produced.") Further, the plaintiff's complaint fails to clarify exactly the evidence that he seeks to have the defendants disclose. See Compl. at 28 (requesting an order to "produce all . . . suppressed exonerating evidence.") Although a complaint may be "ambiguous on its face[,] . . . a lack of specificity is not fatal so long as the defendant[s] [are] given 'fair notice' of the plaintiff's claim." Arent v. Shalala, 70 F.3d 610, 618 (D.C. Cir. 1995) (citation omitted). However, the plaintiff's assertion that the defendants possess and are withholding exculpatory evidence, predicated on the plaintiff's assertion that he also possesses the evidence, is speculative at best. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true.") Further, given that the Puerto Rico District Court has already held that the DOE's investigations and administrative proceedings were not "found to be arbitrary and capricious, an abuse of discretion, or contrary to law[,]" Instituto de Educacion Universal, Inc., 341 F. Supp. 2d at 79, claim preclusion prohibits the Court from questioning those findings, Drake v. FAA, 291 F.3d 59, 66 (D.C. Cir. 2002) ("'[A] final judgment on the merits of an action precludes the parties . . . from relitigating issues that were . . . raised in that action.'" (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980))). The plaintiff has already availed himself of the opportunity to be heard in court and the evidence in his favor in that prior litigation was given due consideration. See Instituto de Educacion Universal, Inc., 341 F. Supp. 2d at 80 ("[T]he regulatory language is unambiguous, and . . . enforced in a manner that is consistent with [its] language."); id. at 82 ("[T]he administrative record identifies with particularity the manner in which [the DOE] rendered its assessment."); id. at 83 ("[B]oth the hearing official and the Secretary did consider [the plaintiff's] evidence . . . and provide[] an explanation for their decisions.").

5

## II. STANDARDS OF REVIEW

### A.   Rule 12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction

In deciding a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a Court is not limited to the allegations set forth in the complaint, but "may consider materials outside of the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction[.]"  Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  Moreover, under Rule 12(b)(1), "it is to be presumed that a cause lies outside [the federal courts'] limited jurisdiction," Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), unless the plaintiff establishes by a preponderance of the evidence that the Court has jurisdiction, see, e.g., Hollington v. Duff, 444 F. Supp. 2d 61, 63 (D.D.C. 2006).

### B.   Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether the plaintiff properly has stated a claim upon which relief may be granted.  Woodruff v. DiMario, 197 F.R.D. 191, 193 (D.D.C. 2000).  For a complaint to survive a Rule 12(b)(6) motion, it need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the claim is and the grounds on which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted).  "Although detailed factual allegations are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the grounds of entitlement to relief, a plaintiff must furnish more than labels and conclusions or a formulaic recitation of the elements of a cause of action."  Hinson ex rel N.H. v. Merritt Educ. Ctr., 521 F. Supp. 2d 22, 27 (D.D.C. 2007) (quoting Twombly, 550 U.S. at 555) (internal quotation marks omitted).  Or, as the Supreme Court more recently stated, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556).  A complaint alleging facts which are "'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Id. (quoting Twombly 550 U.S. at 557) (brackets omitted).  Moreover, "[a] dismissal with prejudice is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Firestone v. Firestone, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (internal quotation marks and citations omitted) (emphasis in original).  Finally, in evaluating a Rule 12(b)(6) motion, "[t]he complaint must be liberally construed in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979) (internal quotation marks and citations omitted), and the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice[,]" E.E.O.C. v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997) (footnote omitted).

### III.  LEGAL ANALYSIS

**A.     Standing**

The defendants contend that the plaintiff lacks Article III standing to bring a claim for relief against them in their individual capacities because the plaintiff is bringing this lawsuit on his own behalf, and not on behalf of the Instituto, "the target of the decisions and findings of the [the DOE]." Defs.' Mem. at 16.  The plaintiff rejoins that he has suffered personal harm as a result of the defendant's actions.  Compl. ¶ 7.  Specifically, the plaintiff states that "the IRS has attempted to collect [Trust Fund Liabilities] from [him] personally on various occasions," id. ¶ 6; DOE agents "preconfiscated over $2.263 million dollars from [the Instituto] and [the] [p]laintiff," id. ¶ 8; "in 1998, the IRS attempted to collect from [the plaintiff] over $28 million dollars that [the Instituto] allegedly owed the" DOE," id. ¶ 9; and the "alleged debt . . . [will] negatively affect [the plaintiff] personally [as well as] his successors . . . since it is not dischargeable through a personal bankruptcy."  Id. ¶ 7.

"Article III standing is a prerequisite to federal court jurisdiction." American Library Ass'n v. FCC, 401 F.3d 489, 492 (D.C. Cir. 2005).  "In 'reviewing the standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims.'" Muir v. Navy Fed. Credit Union, 529 F.3d 1100, 1105 (D.C. Cir. 2008) (citing City of Waukesha v. EPA, 320 F.3d 228, 235 (D.C. Cir. 2003)).  "To demonstrate standing under Article III of the Constitution, [the plaintiff] must show an injury in fact caused by the defendant and redressable by judicial relief." Stilwell v. Office of Thrift Supervision, 569 F.3d 514, 518 (D.C. Cir. 2009) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).  First, the injury must be "concrete and particularized" and either "actual or imminent." City of Dania Beach, Fla. v. FAA,

485 F.3d 1181, 1185 (D.C. Cir. 2007) (citing Fla. Audubon Soc'y v. Bentsen, 94 F.3d 658, 663 (D.C. Cir. 1996)).  Second, "[t]here must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'"  Lujan, 504 U.S. at 560 (quoting Simon v. E. Ky.Welfare Rights Org., 426 U.S. 26, 41-42 (1976)) (alterations in original).  Lastly, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  Id. (citation omitted).

The facts alleged by the plaintiff indicate that he has standing to bring his claims before the Court.  While the DOE's audit and enforcement actions were directed at the Instituto, the plaintiff has adequately alleged actual personal injury arising from the DOE's actions, see Lujan, 504 U.S. at 561 n.1 ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way."), having pled that the IRS attempted collection of $28 million from him personally, the DOE confiscated $2.263 million from both him and the instituto, and the Trust Fund Liabilities were also levied against him personally, Compl. ¶¶ 5, 8-9.  The causation element is satisfied by the plaintiff's assertion that the defendants' caused these injuries by representing the DOE despite exculpatory evidence in their possession that should have dissuaded them from doing so.  Compl. at 27-28.  Lastly, the plaintiff's injury is redressible by a favorable decision from the Court granting the monetary or injunctive relief requested, which would serve to mitigate the plaintiff's personal financial liabilities.  Therefore, the plaintiff has sufficiently demonstrated a cognizable injury caused by the defendants that is redressible by judicial relief, and accordingly, the Court cannot dismiss this case on the basis that the plaintiff lacks constitutional standing to pursue it.

B.     **Res Judicata and Collateral Estoppel**

The defendants argue that the plaintiff's involvement in previously filed litigation, including Rivera v. Gonzales, No. 07-0019 (RBW) (D.D.C. Jan. 3, 2007) ("Rivera I"), which was dismissed for lack of standing on December 14, 2007, Defs.' Mem. at 8-9 (citing Dec. 14, 2007 Order at 7, Rivera I, aff'd sub nom, Ruiz Rivera v. Mukasey, No. 08-5015, 2008 WL 4726052 (D.C. Cir. June 12, 2008)),[8] and the legal doctrines of res judicata and collateral estoppel forbid the relitigation of matters in order "'to conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and to prevent serial forum-shopping and piecemeal litigation,'" Defs.' Mem. at 6 (quoting Hardison v. Alexander, 655 F.2d 1281, 1288 (D.C. Cir. 1981)).  The plaintiff responds that his claims are not barred because the defendants against whom the claims were brought in Rivera I and "the claims and issues [presented in Rivera I]. . . were . . . distinctly different from the ones in the instant controversy."  Pl.'s Opp'n at 22.

A brief review of the elements required for the Court to find that a prior judgment has preclusive effect reveals that those elements are absent from this action and thus no preclusive effect can attach.  "Res judicata bars a claim when there has been a final judgment on the merits in a prior suit involving the same parties or their privies and the same cause of action."  Polsby v. Thompson, 201 F. Supp. 2d 45, 48 (D.D.C. 2002) (citing I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co., 723 F.2d 944, 946-47 (D.C. Cir. 1983)).  The doctrine precludes relitigation of claims that are identical to the claims that were raised and addressed previously or could have been raised in the earlier lawsuit, as well as "'issue[s] of fact or law [which were] actually

---

[8]     The defendants appear to only seek to assert claim and issue preclusion with respect to Rivera I and not the decision in Instituto de Educacion Universal, Inc. v. U.S. Dep't of Educ., 341 F. Supp. 2d 74 (D.P.R. 2004).

10

litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." Taylor v. Sturgell, ___ U.S. ___, ___, 128 S. Ct. 2161, 2171 (2008) (quoting New Hampshire v. Maine, 532 U.S. 742 (2001)). "The four factors that must exist for res judicata to apply are (1) an identity of parties in both suits; (2) a judgment rendered by a court of competent jurisdiction; (3) a final judgment on the merits; and (4) the same cause of action in both suits." Polsby, 201 F. Supp. 2d at 48 (citing, among others, U.S. Indus., Inc. v. Blake Constr. Co., 765 F.2d 195, 205 n.21 (D.C. Cir. 1985)). Similarly, "[u]nder collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. 90, 94 (1980) (citation omitted). These two doctrines "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Id. (citations omitted). By "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate[,] [the doctrines of issue and claim preclusion] protect[] . . . [against] the expense and vexation attending multiple lawsuits, conserve[] judicial resources, and foster[] reliance on judicial action by minimizing the possibility of inconsistent decisions." Montana v. United States, 440 U.S. 147, 153-54 (1979).

  While the defendants are correct that the "[p]laintiff could have raised [the issues in Rivera I] in the previous action[,] but chose to not do so," Defs.' Mem. at 8, the Court's previous decision in Rivera I was a dismissal on standing grounds, not "a final judgment on the merits," Polsby, 201 F. Supp. 2d at 48, and as a result, it cannot be said that the plaintiff received or "had a full and fair opportunity to litigate" the issues alleged in this action, Montana, 440 U.S. at 153-54; accord Kasap v. Folger Nolan Fleming & Douglas, Inc., 166 F.3d 1243, 1248 (D.C. Cir.

1999) ("[D]ismissals for lack of jurisdiction are not decisions on the merits and therefore have no res judicata effect on subsequent attempts to bring suit in a court of competent jurisdiction." (citation omitted)). Therefore, the only issue upon which collateral estoppel has attached is on the issue of the plaintiff's "standing to petition for a writ of mandamus that would compel the [Office of Professional Responsibility] or the [Office of the Inspector General] to investigate the conduct of certain Assistant United States Attorneys." Jan. 10, 2008 Order at 3, Rivera I; see Cutler v. Hayes, 818 F.2d 879, 889 (D.C. Cir. 1987) ("Principles of collateral estoppel clearly apply to standing determinations."). That issue, however, is not a question that is presently before this Court. Accordingly, the Court cannot dismiss this case on the basis that either res judicata or collateral estoppel precludes the plaintiff from pursuing the current lawsuit.

**C.    Immunity**

   **1.    The Attorney General**

The defendants assert that the Attorney General of the United States is entitled to absolute immunity by virtue of his position as an executive officer and supervisor of a cabinet-level department. Defs.' Mem. at 11. The plaintiff argues in response that as the supervisor of the defendant attorneys, the Attorney General has incurred "supervisory liability" for negligently failing to pursue the plaintiff's claims of "misconduct and violations" asserted against his subordinates. Pl.'s Opp'n at 23.

The guiding precedent is clear and unequivocal in addressing this issue. Bivens held that "plaintiffs may sue federal officials in their individual capacities for damages for Fourth Amendment violations." Simmat v. U.S. Bureau of Prisons, 413 F.3d 1225, 1231 (10th Cir. 2005) (citing Bivens, 403 U.S. at 395-97). However, "[g]overnment officials may not be held liable [in a Bivens action] for the unconstitutional conduct of their subordinates under a theory of

respondeat superior." Iqbal, 129 S.Ct. at 1948; see id. ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") Furthermore, any "attempt[] to sue the former Attorney General in his official capacity . . . is barred by sovereign immunity." Perkins v. Ashcroft, 275 Fed. App'x 17, 17 (D.C. Cir. 2008). Therefore, to the extent that the plaintiff is attempting to seek damages from the Attorney General in his official capacity under the FTCA or in his individual capacity under Bivens, no remedy is available. Accordingly, the Court must dismiss the plaintiff's claims against the Attorney General.

### 2. The United States Attorney and Assistant United States Attorney Defendants

The subordinate defendant attorneys claim that they are entitled to either absolute or qualified immunity from the plaintiff's claims for damages. Defs.' Mem. at 11. These attorneys assert that "when federal government agency attorneys engage in activities related to evidence gathering and presentation of that evidence to an adjudicative body, those attorneys enjoy absolute immunity for any damages claims arising from those activities." Id. at 12. Furthermore, these defendant attorneys claim that even if they are not entitled to absolute immunity, they are entitled to qualified immunity, which shields from civil liability "discretionary functions . . . insofar as [the] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 13 (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

The plaintiff responds that because his "[c]onstitutional protections were violated with deliberate[] indifference by the [d]efendants," any asserted claim to immunity that the defendants make has been abrogated. Pl.'s Opp'n at 5. Specifically, the plaintiff argues, by failing to reveal

exculpatory evidence and relying on allegedly fraudulent evidence during the DOE's defense, the defendant attorneys committed "vindictive and malicious prosecution . . . in violation of the [p]laintiff's [c]onstitutional" rights.  Compl. at 27.  The plaintiff characterizes the defendant attorneys' failure to recognize and disclose to him exculpatory evidence as negligent investigatory conduct while acting as "client-agency legal counsels . . . [,] [which is] first and foremost an investigative role."  Id. ¶ 35.  Such a function, he argues, is entitled to only qualified immunity under Imbler v. Pachtman, 424 U.S. 409 (1976).  Compl. ¶ 35.

In Imbler v. Pachtman, the Supreme Court held that when "initiating a prosecution and in presenting the State's case, [a] prosecutor is immune from a civil suit for damages[.]"  424 U.S. at 431.  Prosecutorial immunity "turns on the function performed by the prosecutor" and depends on whether the conduct was "intimately associated" with the judicial process, Atherton v. Dist. of Columbia Office of Mayor, 567 F.3d 672, 683 (D.C. Cir. 2009), with emphasis placed upon "whether the particular activity in dispute was performed by a prosecutor in his or her official capacity as an advocate for the state in the course of judicial proceedings[,]" id. (citing Kalina v. Fletcher, 522 U.S. 118, 125 (1997)).  In light of this principle, "[a] prosecutor receives absolute immunity only when he acts as an 'advocate.'"  Gray v. Bell, 712 F.2d 490, 499 (D.C. Cir. 1983).  A prosecutor's advocacy role is distinct and separate from a prosecutor's performance of "'administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings,'" for which there is no immunity.  Atherton, 567 F.3d at 683 (citing Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993)).  Therefore, while "[d]elineation of the precise scope of protected advocatory conduct . . . has proved to be exceedingly difficult[,] . . . [c]ourts are agreed that that purely advocatory functions—conduct implicating . . . solely the initiation and prosecution of . . . trial

14

proceedings—triggers absolute immunity." Gray, 712 F.2d at 499. At a minimum, advocatory conduct includes "initiating a prosecution" and "presenting the State's case." Moore v. Valder, 65 F.3d 189, 193 (D.C. Cir. 1995) (quoting Imbler, 424 U.S. at 431). "Additionally, 'whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present' are advocatory decisions." Id. at 193 n.6 (citing Imbler, 424 U.S. at 431 n.33). In comparison, investigatory functions are "activit[ies] of 'police nature'" such as "acquiring evidence which might be used in a prosecution." Moore, 65 F.3d at 194 (quoting Barbera v. Smith, 836 F.2d 96, 100 (2d Cir. 1987)). A prosecutor's investigatory function is in "contradistinction to [the] 'organization, evaluation, and marshalling' of such evidence," which falls within the purview of advocatory conduct and is thus entitled to absolute immunity. Id. (quoting Barbera, 836 F.2d at 100).

> The Supreme Court recognized that absolute immunity . . . leave[s] the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system.

Imbler, 424 U.S. at 427-428; see Imbler v. Pachtman, 500 F.2d 1301, 1304 (9th Cir. 1974), aff'd 424 U.S. 409 ("The 'balance between the evils inevitable in either alternative' has consistently been struck in favor of protecting honest criminal prosecution, at the expense of those injured by scoundrels, by granting immunity from suit to all prosecutors.") That prosecutorial immunity exists presumes that "the safeguards built into the judicial process [already] reduce the need for private damages actions as a means of controlling unconstitutional conduct." Butz v. Economou, 438 U.S. 478, 512 (1978). Such safeguards include "not only . . . their professional obligations,

15

but . . . the knowledge that their assertions will be contested in open court," id., which is both "adversar[ial] in nature" and "conducted before an impartial judge," Simons v. Bellinger, 643 F.2d 774, 782 (D.C. Cir. 1980). Moreover, "[a]lternative mechanisms, such as the trial judge's remedial powers, appellate review and post-conviction collateral remedies, exist to remedy injury caused by prosecutorial misconduct." Moore, 65 F.3d at 193. Accordingly, because "evidence [is] subject to attack through cross-examination, rebuttal, or reinterpretation by opposing counsel," Butz, 438 U.S. at 515, "both the prosecution and defense have wide discretion in the conduct of the trial and the presentation of evidence," Imbler, 424 U.S. at 426.

A review of the plaintiff's complaint reveals that the plaintiff seeks to hold the subordinate defendant attorneys liable for conduct that the standard judicial procedures are meant to address, not the type of malicious or dishonest misconduct to which prosecutorial immunity would not attach. Specifically, the plaintiff claims that these defendants acted "egregiously and maliciously derelict in their duties by failing to provide legal advice to their client agency." Compl. ¶ 28. The alleged failure to provide legal advice is founded on the defendant attorneys acting in defense of DOE findings "contrary to the overwhelming smoking gun and beyond doubt evidence timely produced," id. at 27-28, and on the defendant attorneys" "fail[ure] to adequately [evaluate the] evidence," id. at 26. These assertions directly attack the manner in which the defendant attorneys presented their evidence and conveyed their arguments in their role as advocates for the government before the courts.[9] It is precisely this activity from which

---

[9] It is unclear from the pleadings whether the defendant attorneys' representation of the DOE extended into the administrative hearings that found the plaintiff in violation of federal regulations. However, the defendant prosecutors would still be absolutely immune for their representation during administrative hearings. See Butz, 438 U.S. at 512-13 ("[A]djudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages.").

(continued . . .)

prosecutors are explicitly and absolutely immune from civil suits. Atherton, 567 F.3d at 683; accord Burns v. Reed, 500 U.S. 478, 491 (1991) (The presentation of evidence and arguments before a court "clearly involve[s] the prosecutor's 'role as advocate for the State'"). Such is the case even where the plaintiff's allegations impute "malicious or dishonest" conduct.[10] Imbler, 424 U.S. at 427-428; see, e.g., id. (barring claims that prosecutors used false testimony and withheld exculpatory evidence); Peay v. Ajello, 470 F.3d 65 (2d Cir. 2006) (barring claims that prosecutors fabricated evidence, withheld exculpatory evidence, and suborned perjury); Boyd v. Biggers, 31 F.3d 279 (5th Cir. 1994) (barring claims that prosecutors used perjured testimony at trial); Lee v. Willins, 617 F.2d 320 (2d Cir. 1980) (barring claims that prosecutors falsified evidence and suborned perjury); Henzel v. Gerstein, 608 F.2d 654 (5th Cir. 1979) (barring claims that prosecutors used perjured testimony at trial). For the Court to hold otherwise would leave prosecutors "constrained in making every decision [based on] the consequences . . . of his [or her] own potential liability in a suit for damages." Imbler, 424 U.S at 424-25. Indeed, the work of a prosecutor necessarily involves a great deal of discretion and their public functions would suffer if they incurred potential liability for every decision made in the course of their official duties. See id. Therefore, this Court must find that the Attorney General's subordinate defendant

---

(. . . continued)

[10] Although the Puerto Rico District Court did not decide the issues of fraud and malicious prosecution, that court thoroughly reviewed the administrative record, the plaintiff's evidence, and the plaintiff's arguments before finding that the DOE's findings were proper and not "arbitrary and capricious." See supra n.7; see also Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ., 341 F. Supp. 2d 74 (D.P.R. 2004).

attorneys are entitled to absolute immunity for the conduct alleged by the plaintiff to be wrongful, as it was plainly advocatory in nature.[11]

### IV. CONCLUSION

For foregoing reasons, the defendant's motion to dismiss must be granted.[12]

_____/s/_____
Reggie B. Walton
United States District Judge

---

[11] Even if the Court were not required to accord the defendant attorneys absolutely immunity from liability for the actions alleged by the plaintiff, they would nonetheless be entitled to qualified immunity. "[Q]ualified immunity protects officials from liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Atherton, 567 F.3d at 689 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). A qualified immunity analysis requires that the Court consider "whether the alleged facts show that the individual's conduct violated a statutory or constitutional right, and . . . whether that right was clearly established at the time of the incident." Id. First, insofar as the plaintiff has alleged a violation of the Fourth Amendment, there are no allegations that the defendant attorneys personally conducted any unreasonable search or seizure of the plaintiff or his property, or even that they authorized such a search or seizure. Pl.'s Opp'n at 4. Second, the plaintiff's claim that the defendant attorneys deprived him of his right to petition under the First Amendment and right to due process under the Fifth Amendment is unavailing. Id.; see Atherton, 567 F.3d at 690 ("[A] fundamental requirement of due process is the opportunity to be heard . . . at a meaningful time and in a meaningful manner" (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965))). The plaintiff had the opportunity to present his case at the administrative hearings where he and the Instituto were found to be in violation of federal regulations, and he subsequently had the opportunity to appeal that decision to the Puerto Rico District Court and the First Circuit. See supra n.7. And those administrative and judicial forums conducted thorough reviews of the administrative record and the plaintiff's evidence. Id. As a result, the Court does not find that the plaintiff was deprived of any constitutional rights, and the defendants are therefore also entitled to qualified immunity.

[12] An Order consistent with the Court's ruling was issued on September 28, 2009. That Order is final and appealable upon the issuance of this Memorandum Opinion.